UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                CASE No. 1:09-cr-143

                                                HON. ROBERT J. JONKER

LARRY CHARLES BEAN,

    Defendant.

_____/

## **OPINION REGARDING DEFENDANT BEAN'S FIRST STEP ACT MOTION**

### **INTRODUCTION**

Defendant Bean pleaded guilty to a Section 841(b)(1)(A) drug offense involving at least 50 grams of crack cocaine in August of 2009. The government had a Section 851 Notice on file reporting a prior felony drug offense conviction. At the time of Defendant Bean's sentencing in December of 2009, this exposed him to a mandatory minimum sentence of twenty years in prison. He was thirty-one years old at the time.

The matter before the Court is Defendant Bean's motion for modification or reduction in sentence under the newly enacted First Step Act. (ECF No. 67). The Court appointed counsel to assist Defendant Bean with his motion, and both sides have filed briefs. The government responds that the First Step Act reduces the statutory mandatory minimum applicable to Defendant Bean, but does not affect defendant's maximum sentence or his guideline range. And because Defendant Bean has already received a below-guideline sentence, the government suggests no further reduction is called for. (ECF No. 72). The defense replies by averring that the First Step Act

provides a free-standing remedy and so the Court should conduct a plenary resentencing. It contends that in such a proceeding, the Court may consider several other matters and apply other changes in the law that may favor the Defendant. For example, the defense contends the Court should determine whether the predicate offense in the government's Section 851 notice would qualify as a predicate offense today. (ECF No. 73). The government opposes any plenary proceeding.

The Court sees no need for a hearing on the fully briefed issues. Defendant Bean is eligible for relief under the First Step Act, but the Court does not believe a plenary resentencing is necessary or proper. Once eligibility is established, however, everything else goes into the discretionary mix to inform the Court's decision. The Court discerns a number of considerations that justify a reduced sentence under the First Step Act in this case. The Court can and does exercise its discretion under the First Step Act to reduce Defendant Bean's sentence as provided in this Opinion and accompanying Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Offense Conduct*

In December 2008 an anonymous source informed the Kalamazoo Valley Enforcement Team that crack cocaine was being manufactured in an apartment located at 5030 Cooper's Landing, Kalamazoo. A building representative confirmed that there had been complaints of excessive traffic in and out of apartment 2A, and a search warrant was obtained. After conducting surveillance, police determined that the apartment was occupied by Demetrius Haywood, and his cousin, Defendant Bean. A search warrant was executed on the premises on December 16, 2008, and police recovered a semi-automatic handgun, ammunition, narcotics, cash currency, and drug paraphernalia. While Mr. Haywood was arrested, Defendant Bean was not arrested at that time,

and the investigation continued. In January 2009, police executed a warrant at the residence of Melvin Scott Coy-Coleman. There law enforcement officers recovered 54.06 grams of crack cocaine, and Mr. Coy-Coleman reported he had recently purchased the crack cocaine from Defendant Bean. Then, Defendant Bean was arrested in March 2009 for driving without a license as well as for child support violations. During a search of his person, police recovered a quantity of crack cocaine. After being arrested, Defendant Bean posted bond and was released.

The investigation into Defendant Bean culminated on April 27, 2009. On that date police officers executed a search warrant at his residence. The police recovered crack cocaine, lottery tickets, cash, and drug paraphernalia such as scales and packaging materials. In total, approximately 277 grams of crack cocaine was attributed to Defendant Bean.

   2.    *Charge & Plea*

Defendant Bean was charged in a three-count indictment on May 13, 2009, with conspiracy to distribute fifty grams or more of crack cocaine (Count 1); maintaining a drug involved premises (Count 2); and with possession with intent to distribute five grams or more of crack cocaine (Count 3). (ECF No. 1).

On August 18, 2009, the government filed an information and notice of prior drug conviction. (ECF No. 33). The filing notified the defense and the Court of the Defendant's April 1, 2002, felony drug conviction in state court for delivery of less than 50 grams of cocaine. The effect of this notice was to increase the range of statutory penalties then applicable to Defendant Bean from ten years to life imprisonment to twenty years to life imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii); 851 (2009).[1]

---

[1] The information and notice referenced the penalties found in Section 841(b)(1)(B) rather than Section 841(b)(1)(A). The increased statutory exposure referenced in the document, however, as

On March 5, 2009, Defendant pleaded guilty to Count 1 (conspiracy to distribute 50 grams or more of crack cocaine). (ECF No. 45). Under the terms of a written plea agreement, the government agreed to dismiss the remaining charges in the indictment and not to file an additional Section 851 notice alleging that the defendant had more than one prior felony drug conviction.[2]

### 3. *PSR & Sentencing*

The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Bean was responsible for a total drug quantity of 277.71 grams of crack cocaine, as well as for the possession of a firearm and taser recovered during the December 16, 2008 search of the apartment he shared with Mr. Haywood. (PSR ¶ 28). The quantity of narcotics triggered an initial base offense level of 32. Two levels were added for possession of dangerous weapons during the offense, resulting in an adjusted offense level of 34. After adjusting downward for acceptance of responsibility, the total drug offense level was 31. (PSR ¶¶ 34, 38-41).

The PSR determined, however, that Defendant Bean qualified as a career offender because he committed the offense of conviction after sustaining two prior felony convictions for controlled substance offenses. Since the statutory maximum penalty for the offense of conviction was life under Section 841(b)(1)(A)(iii), the guidelines called for a career offender offense level of 34, after adjusting for acceptance of responsibility. *See* U.S.S.G. § 4B1.1(b)(A). Level 34 being higher than the offense level calculated under Section 2D1.1, it took precedence and became Defendant Bean's total offense level. (PSR ¶¶ 42-43).

---

well as the charge in the indictment, plainly reference Section 841(b)(1)(A)'s penalties. In any event, no objection to this filing was made.

[2] At the time, a defendant convicted under Section 841(b)(1)(A)(iii) with two or more prior felony drug convictions was subject to a mandatory term of life imprisonment.

The officer then scored Defendant's criminal history at eighteen points, resulting in a criminal history category of VI.[3] The guideline range for a total offense level of 34 and criminal history category of VI was 262 to 327 months. (PSR ¶¶ 77-78).[4] At the December 9, 2009 sentencing the Court varied downward from the guideline range and imposed a sentence of 240 months imprisonment—the mandatory minimum. (ECF No. 45). During the hearing, the Court acknowledged Defendant Bean's lengthy criminal history, but noted that the guideline range created an unwarranted disparity between Defendant Bean and the sentence his co-defendant, Mr. Haywood, received.[5] Judgment entered on December 10, 2009. (ECF No. 46).

4.      *Post Sentencing Matters*

Defendant Bean did not appeal his conviction or sentence. Nor did he file a Section 2255 motion. In the past, he has tried to reduce his sentence under Guideline Amendment 750 (ECF No. 54) and Guideline Amendment 782 (ECF No. 56). The Court concluded that Defendant Bean was ineligible for relief on both occasions, noting Defendant Bean had received the statutory minimum sentence and that his guidelines were driven by his career offender status. (ECF No. 55, 62).

---

[3] Since Defendant Bean qualified as a career offender, his criminal history was also required to be VI. *See* U.S.S.G. § 4B1.1(b). (PSR ¶ 59).

[4] Defendant Bean's career offender status raised his guidelines above the statutory minimum penalty. Without the career offender status, Defendant Bean's offense level of 31 and criminal history category of VI would have resulted in a guideline range on the chart of 188 to 235 months, below the mandatory minimum sentence then applicable to him. His guidelines would then have become 240 months under U.S.S.G. § 5G1.1(b).

[5] Mr. Haywood was originally charged in Counts 1 and 2 of the indictment. On August 19, 2009, Mr. Haywood pleaded guilty to a superseding felony information charge of unlawful use of a communications facility. In exchange for his plea, the government dismissed Counts 1 and 2 of the indictment as to him. Defendant Haywood was sentenced on December 10, 2009 to forty-eight months imprisonment. (ECF No. 46). He has since been released from custody and was discharged from supervised release on January 15, 2013. (ECF No. 53).

According to the BOP, Defendant Bean is currently scheduled to be released from imprisonment on November 11, 2026.

### 2. *The Fair Sentencing Act of 2010*

Less than a year after Defendant Bean was sentenced, Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Under the Fair Sentencing Act, therefore, in order to trigger the twenty years to life sentencing range of Section 841(b)(1)(A)(iii) with an 851 predicate, the offense would have to involve more than 280 grams of crack cocaine.

The changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[6] Because Defendant Bean had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

---

[6] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Bean was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

### 3. *The First Step Act of 2018*

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simmons*, __ F. Supp. 3d __, No. 07-CR-00874, 2019 WL 1760840, at *4 (E.D.N.Y. Apr. 22, 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
>
> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

**1. Summary of the Court's Process**

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, __ F. Supp. 3d __, No. 1:08-cr-65-01, 2019 WL 2135494, at *4 (W.D. Mich. May 16, 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at *4. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well, but this case also presents issues relating to a defendant's career offender status and changes (or not) to the guideline range. Based on the Court's approach in *Boulding*, these questions do not affect the categorical eligibility determination. They simply inform the Court's discretionary call at the second step.

At that second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce its sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.* at *5; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does

not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing."). But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 2019 WL 2135494, at *5. This means, among other things, that career offenders like Defendant Bean who did not previously receive relief under the retroactive amendments may now be able to receive a reduced sentence, if the court exercises its discretion to do so. At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at *2.

**2. Defendant Bean is Eligible for a Reduced Sentence**

Defendant Bean is eligible for consideration of a reduced sentence under the First Step Act, and the parties do not argue otherwise. Defendant Bean's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . .

9

of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense." The categorical limitations in Section 404(c) also do not apply to Defendant Bean. His sentence was not "previously imposed or previously reduced in accordance" with the Fair Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

3. **Scope of Relief**

In determining whether to exercise its discretion to reduce Defendant Bean's sentence, the Court begins with a guideline range comparison. The table below demonstrates the differences between the guideline calculation as it existed when Defendant Bean was originally sentenced in 2009 and the guidelines as they exist now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act.[7]

| Count 1 | Original Sentence | First Step Act |
|---|---|---|
| Base Offense Level<br><br>*277.71 grams of cocaine base* | Level 32 (§ 2D1.1(c)(4)) (2008)<br><br>*At least 150 G but less than 500 G of Cocaine Base* | Level 28 (§ 2D1.1(c)(6)) (2018)<br><br>*At least 196 G but less than 280 G of Cocaine Base* |
| Special Offense Characteristics<br><br>*Possession of a dangerous weapon* | +2 levels (§ 2D1.1(b)(1) (2008)) | +2 levels (§ 2D1.1(b)(1) (2018) |
| Total Drug Offense Level (After Acceptance) | Level 31 | Level 27 |
| Statutory Penalty | 20 years to Life | 10 years to Life |

---

[7] The government states that when a defendant qualifies for a reduction under the First Step Act, it will not object to further consideration under Section 3582(c)(2) of motions to reduce a sentence under the retroactive guideline amendments. From a judicial efficiency standpoint, the Court's analysis uses these amendments without requiring a separate motion. The guideline range is not a constraint, in any event.

|  | *Section 841(b)(1)(A)(iii) + 1 felony drug offense* | *Section 841(b)(1)(B)(iii) + 1 felony drug offense* |
|---|---|---|
| Chapter Four Enhancement (After Acceptance) | Level 34 (§ 4B1.1(b)(A)) (2008)<br><br>*Maximum Life Penalty* | Level 34 (§ 4B1.1(b)(1)) (2018)<br><br>*Maximum Life Penalty* |
| **Total Offense Level** | Level 34 | Level 34 |
| **Criminal History** | Category VI | Category VI |
| **Guideline Range Before Consideration of Career Offender Status & Statutory Penalty** | 188 to 235 months on the chart; 240 months under U.S.S.G. § 5G1.1(b) | 130 to 162 months |
| **Guideline Range After Consideration of Career Offender Status & Statutory Provisions** | 262 to 327 months | 262 to 327 months |

As the above chart demonstrates, Defendant Bean's guideline range has not been reduced. This is because his sentence continues to be driven by his career offender status, and the maximum statutory penalty used to determine that offense level remains the same—life. Neither side disputes that the penalty range in Section 841(b)(1)(B) now applies to Defendant Bean because the amount involved in the offense, approximately 277 grams of crack, is less than the 280 grams now necessary to trigger those penalties.[8] But because of Defendant Bean's prior felony drug offense, the maximum penalty range under both Section 841(b)(1)(A)(iii) and Section 841(b)(1)(B)(iii) is the same. Accordingly, the career offense level applicable to Defendant Bean also is unchanged,

---

[8] Elsewhere, this Court has rejected the government's argument that a defendant is ineligible for relief if the record, including judge found facts, contains an amount sufficient to trigger the original penalty provisions. The Court need not probe any further into the issue here because, even if the government is correct that judge found facts may be used, the amount in this case is not sufficient to trigger the original penalty provisions.

and that offense level continues to take precedence when computing Defendant Bean's guideline range.[9]

After its review of the record, including Defendant Bean's post-sentencing behavior, the Court elects to exercise its discretion to reduce Defendant Bean's sentence. To be sure, Defendant's guideline range has not changed, as the government points out. Moreover, Defendant's existing sentence is below the guideline range. This does not disqualify Defendant from a further reduction, in the Court's discretion.

While the guideline range has not changed, several other considerations have. The mandatory minimum sentence, for one thing, is now ten years, rather than twenty. Previously this Court sentenced Defendant to twenty years imprisonment, the lowest it could go under the statute at the time. The First Step Act now permits the Court to exercise the full range of its discretion consistent with the Section 3553(a) factors. Additionally, the spread between the drug offense level and the career offense guideline has grown. Whereas before there was a span of less than 30 months between the high end of the drug guideline and the lower end of the career offender guideline, that spread is now 100 months. The Court therefore determines to vary downward from

---

[9] In arguing for a plenary resentencing, the defense suggests that the Court should apply the new "serious drug felony" definition in Section 401(a) of the First Step Act. It further notes that it is unclear whether any of Defendant's prior convictions would qualify as serious drug felonies and asks the court to hold a hearing to make the call. (ECF No. 73, PageID.213). Absent the Section 851 notice, Defendant's statutory penalty range would be a minimum of five years and a maximum of forty years imprisonment. Defendant's total offense level also would be 31, after acceptance, given the maximum penalty of 40 years. *See* Section 4B1.1(b)(2). An offense level of 31 and Criminal History Category of VI results in a guideline range of 188 to 235 months on the chart. The most natural reading of Section 401 of the First Step Act, however, is that it is not retroactive. *See* First Step Act of 2018 § 401(c). This reason, along with the Court's determination that the First Step Act does not provide for a plenary resentencing, leads the Court to decline to revisit Defendant Bean's Section 851 notice and so no hearing on the matter is necessary. The issues may still properly inform the Court's discretion.

the amended guideline range and to reduce Defendant Berry's sentence to 196 months imprisonment. All other terms of the original sentence remain unchanged.

This sentence reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities. It also incorporates the need to avoid unwarranted sentence disparities, the chief reason for the Court's original decision to vary downward. With respect to his post-sentencing behavior, the probation officer has provided a report from the Bureau of Prisons reflecting minimal disciplinary infractions and several completed educational programs. The First Step Act now permits the Court to impose a reduced sentence that, in the Court's mind, is the more consistent outcome after a consideration of this and all the 3553 factors.

## CONCLUSION

Defendant Bean's pro se motion for modification or reduction of sentence under the First Step Act (ECF No. 67) is granted to the extent detailed in this Opinion, and his term of imprisonment reduced to a total term of 196 months imprisonment. All other terms of the original sentence, including the ten years of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.


Dated:   June 20, 2019              /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE